## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**          **CRIMINAL DOCKET NO. 2:16-32**

**VERSUS**                            **JUDGE BARRY W. ASHE**

**LOUIS AGE JR.**
**LOUIS AGE III**
**RONALD WILSON JR**
**KENDRICK JOHNSON**
**STANTON GUILLORY**

## MEMORANDUM IN SUPPORT OF
## KENDRICK JOHNSON'S MOTION TO SEVER DEFENDANTS

NOW INTO COURT, through undersigned counsel, comes the Defendant, Kendrick Johnson, who pursuant Rule 14 of the Federal Rules of Criminal Procedure, respectfully moves this Court for an order severing his case from that of co-defendant Guillory. Johnson avers the following in support of his motion.

### BACKGROUND

On August 17, 2017, the Government filed an eleven-count superseding indictment in which Kendrick Johnson was charged with: conspiracy to commit murder-for hire; two counts of conspiracy to obstruct justice by murder of a Federal witness; substantive offenses for murder-for-hire and obstruction of justice by murder; conspiracy to obstruct justice; giving false statements to a Federal agent; and perjury before a grand jury. All of Johnson's charges arose from the single killing of Milton Womack and the subsequent grand jury investigation.

Johnson is charged along with co-defendants Louis Age, Jr., Louis Age III, Ronald Wilson, Jr., and Stanton Guillory for their alleged involvement in the killing of Milton Womack, and various attempts to obstruct justice.

To date, the Government has produced a huge number of documents, phone call recordings, and photographs that could potentially be used at trial. Notably, the Government has produced tens of thousands of documents, phone call recordings, and photographs related to the investigation and prosecution of the "110ers" and Young Mafia Fellaz gang ("YMF")— two notorious New Orleans street-gangs, with which co-defendant Stanton Guillory was allegedly involved.

Based on the nature of the items produced, Johnson anticipates that the Government will seek to introduce evidence relating to the violent criminal activities of Guillory, the "110ers," and "YMF" during Johnson's trial. Although the evidence pertaining to Guillory's involvement with "YMF" and the "110ers" is irrelevant to both the case at hand and the other co-defendants, Johnson anticipates that the Government will attempt to introduce these documents, photographs, and recordings either under a res gestae theory (which would not be plausible) or as evidence of other crimes and bad acts.

Because the evidence pertaining solely to the criminal acts of Guillory, "YMF," and the "110ers" is both irrelevant and extremely voluminous, Johnson requests an evidentiary hearing during which the Government should be called upon to elect and disclose which specific pieces of evidence it intends to introduce and use at trial.

## LAW AND ANALYSIS

### I.    Severance of Defendants under Federal Rule of Criminal Procedure 14 (a)

Although courts generally favor joint trials for defendants indicted together, "the Federal Rules of Criminal Procedure recognize that circumstances may be presented where the prejudice to a defendant from joinder with a co-defendant(s) in a joint trial overrules the interest in judicial

economy."[1] Accordingly, Rule 14(a) provides for severance of defendants where the joinder "appears to prejudice a defendant or the government." Such prejudice exists "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[2]

In *Zafiro*, the Supreme Court discussed situations that could "prevent a jury from making a reliable judgment."[3] Prejudice may occur where "evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant,"[4] or where admitted evidence is probative of a defendant's guilt but technically only admissible against a codefendant.[5] The prime example is where evidence of a codefendant's wrongdoing erroneously leads a jury to conclude that a defendant is guilty.[6] In *Blankenship*, the Eleventh Circuit summarized *Zafiro*'s discussion into a singular rule: "Severance is mandated where compelling evidence that is not admissible against one or more of the co-defendants is to be introduced against another co-defendant."[7]

When the risk of undue prejudice is present, the court must determine an adequate safeguard. Although limiting instructions <u>may</u> provide adequate protection, such instructions do not always suffice.[8] The test for whether the risk of prejudice warrants a severance is whether:

> "[U]nder all the circumstances of the particular case, as a practical matter, is it within the capacity of the jurors to follow the court's admonitory instructions and

---

[1] *United States v. McRae*, 702 F.3d 806, 821-22 (5th Cir. 2012).

[2] *Zafiro v. United States,* 506 U.S. 534, 539 (1993).

[3] *See Zafiro*, 506 U.S. at 539.

[4] *Id.,* at 539.

[5] *Id.,* at 539.

[6] *See Zafiro*, 506 U.S. at 539; *see United States v. Erwin,* 793 F.2d 656, 665 (5th Cir. 1986) (courts should consider whether the defendant may be "unduly prejudiced by harmful 'spill-over' of evidence against other defendants).

[7] *United States v. Blankenship*, 382 F.3d 1110, 1123 (11th Cir. 2004).

[8] *See, e.g.*, *United States v. Cortinas*, 142 F.3d 242, 248 (5th Cir. 1998); *United States v. McRae*, 702 F.3d 806, 827-28 (5th Cir. 2012); *United States v. Erwin*, 793 F.2d 656, 666 (5th Cir. 1986).

accordingly to collate and appraise the **independent evidence against each defendant solely upon that defendant's own acts, statements, and conduct**."[9]

Ultimately, the risk of prejudice will vary with the facts in each case.[10] But the law is clear: when the evidence at issue is particularly voluminous or inflammatory, limiting instructions are inadequate to protect against prejudicial spillover.  Instead, severance is required.[11]

In *United States v. Cortinas*, the Fifth Circuit Court of Appeal ruled that the trial court abused its discretion in denying two defendants' motion for severance when the Government introduced extensive evidence concerning violent acts of the Bandidos gang— acts that were unrelated to the defendants' specific involvement in the charged conspiracy.[12] In so ruling, the appellate court noted that neither of the appellants ever associated with the Bandidos, and the Bandidos' violent acts occurred outside the temporal scope of the appellants' involvement in the charged conspiracy.[13]  Additionally, the court emphasized that the Government introduced "highly inflammatory evidence" pertaining to the shooting of a fourteen-year-old boy.[14] The court determined that limiting instructions "were inadequate to mitigate the prejudicial effect of the overwhelming testimony regarding the violent, criminal activities of the Bandidos."[15] Accordingly, the court vacated the defendants' convictions and remanded to the trial court.[16]

---

[9] *United States v. Salomon*, 609 F.2d 1172, 1175 (5th Cir. 1980) (quoting *United States v. Wasson*, 568 F.2d 1214, 1222 (5th Cir. 1978) (emphasis added).
[10] *Zafiro*, 506 U.S. at 539.
[11] *See, e.g., United States v. Cortinas*, 142 F.3d 242, 248 (5th Cir. 1998); *United States v. McRae*, 702 F.3d 806, 827 (5th Cir. 2012); *United States v. Erwin*, 793 F.2d 656, 666 (5th Cir. 1986).
[12] *United States v. Cortinas*, 142 F.3d 242, 248 (5th Cir. 1998).
[13] *Id.* at 248.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 251.

4

Similarly, in *United States v. McRae*[17], the Fifth Circuit held that the trial court abused its discretion in denying a defendant's motion for severance when the Government introduced inflammatory evidence of acts with which the defendant was not charged or involved. In *McRae*, the defendant, a police officer during Hurricane Katrina, was charged with shooting and killing an individual while his co-defendant was charged with burning the victim's body as part of a cover-up.[18]   There was no evidence that the officer who shot the decedent was involved in or aware of the burning of the body.   The Fifth Circuit determined that "[t]he most compelling prejudice" resulted from "severely emotional nature" of testimony and photographs related to the codefendant's burning the victim's body.[19] Highlighting "the highly inflammatory and prejudicial nature of the charges and evidence against the co-defendants," the court determined "that limiting instructions could not mitigate the prejudice," and therefore a severance was required.[20]   Accordingly, the court vacated the convictions and sentences and remanded to the trial court.[21]   It is worth noting that the police officer who committed the shooting was acquitted of all charges when his case was retried after the severance.[22]

## II.     A Joint Trial with Co-defendant Guillory Will Prejudice Johnson's Right to a Fair Trial

Similar to the defendants in *Cortinas* and *McRae*, Johnson anticipates that the Government will seek to introduce voluminous amounts of inflammatory evidence that will prevent him from receiving a fair trial.

---

[17] *McRae*, 702 F.3d 806.
[18] *Id.*
[19] *Id.* at 825-27.
[20] *Id.* at 828.
[21] *Id.* at 842.
[22] *See United States v. David Warren*, EDLA # 10-cr-154, Sec. I.  ECF #949.

Specifically, Johnson anticipates the introduction of testimony and other evidence pertaining to the gang-related activities of co-defendant Stanton Guillory. At this time, the Government has produced an overwhelming amount of evidence pertaining to Guillory and his involvement with the "110ers" and "YMF." The evidence consists of tens of thousands of documents, phone calls, and photographs pertaining solely to the violent and nefarious activities of "YMF" and the "110ers"— activities that are irrelevant to the currently charged conspiracy.

But *Cortinas* makes clear: where the Government seeks to introduce prejudicial and inflammatory evidence of violent gang activity that is otherwise unrelated the co-defendant's alleged involvement in a conspiracy, a severance is required.[23]

As an initial matter, the acts of the "YMF" and the "110ers" are not relevant to the charges at hand. The Government has not produced a single piece of evidence linking Johnson to "YMF" or the "110ers;" nor does the Government allege Johnson's participation in the laundry list of violent, criminal activities perpetrated by these gangs. Moreover, there is no indication that Johnson has ever associated with Stanton Guillory—directly or indirectly—outside of the conspiracy alleged by the Government in this case.  Indeed, as far as the defense is aware, it is not the Government's theory that Mr. Johnson ever associated or had contact with Guillory even as part of the conspiracy. Because the violent criminal acts of the "110ers," "YMF," and Guillory are irrelevant to Johnson's alleged involvement in the charged conspiracy, allowing the introduction of voluminous evidence detailing such violent criminal acts by a co-defendant would create an undue risk of prejudice to Mr. Johnson.  *See, Cortinas,* 142 F.3d at 248 (finding undue

---

[23] *Cortinas*, 142 F.3d at 248.

prejudice when "neither [of the defendant's] was associated with the Bandidos); *see also McRae*, 702 F.3d at 823 (finding unfair prejudice when the defendant was not "in any way associated with" the acts of his codefendant).

The inflammatory nature of the evidence makes the risk of undue prejudice especially severe.  Many of the photographs depict Guillory and other members of "YMF" and/or "110ers" brandishing weapons (many of which contain "extended" clips) and flashing gang-signs and other obscene hand gestures— typical signifiers of violent gang activities. Additionally, many of the reports and interviews reference these gangs' extensive involvement in drug trafficking and numerous high-profile shootings that plagued New Orleans for years.

But the most obviously inflammatory and prejudicial evidence concerns the involvement of  "YMF" and the "110ers" in a shooting at a Central City birthday party that resulted in the death of five-year-old Briana Allen and Shawanna Pierce, a mother of three, both of whom were unintended casualties.[24]  The murder of Briana Allen was one of the most notorious crimes in Southeast Louisiana in modern memory. The event was highly publicized, and attracted attention from prominent public figures such as former Mayor Mitch Landrieu and Archbishop Gregory Aymond.[25]

It is clear that requiring Johnson to stand trial while the Government introduces testimony and evidence related to the multitude of violent, criminal activities of Guillory

---

[24] *See* John Simerman, *Gang Members Convicted in Killing of 5-Year-Old Briana Allen*, The Times-Picayune (Feb. 3, 2015) , *available at* https://www.nola.com/news/article_ca519f02-1c4f-55b8-901c-f29fb00fad0d.html.

[25] *See* John Simerman, *Defendants in New Orleans Gang Conspiracy Related to Briana Allen Killing Appear in Court Under Intense Security*, The Times-Picayune (May 18, 2018) , *available at* https://www.nola.com/news/crime_police/article_ce173325-5803-5c3d-9cb6-9b19027fc394.html.

and "YMF" and the "110ers" would prejudice Johnson's right to a fair trial. *See Cortinas*, 142 F.3d at 248. This is especially so considering the inflammatory and "severely emotional nature of the testimony and photographs" depicting numerous shootings— one of which involved a five-year old victim. *See McRae*, 702 F.3d at 827. In such a case, limiting instructions are inadequate to protect against prejudicial spillover and, to ensure Johnson's right to a fair trial, a severance should be granted.

Respectfully submitted,

*/s/ Herbert V. Larson, Jr.*
Herbert V. Larson, Jr., (Bar No. 8052)
THE LAW OFFICES OF HERBERT V.
 LARSON, JR.
700 Camp Street
New Orleans, Louisiana 70130
(504) 528-9500 Telephone
hvl@hvllaw.com

*/s/ Stephen J. Haedicke*
Stephen J. Haedicke (Bar No. 30537)
LAW OFFICE OF STEPHEN J. HAEDICKE
1040 Saint Ferdinand St.
New Orleans, LA 70117
(504) 291-6990 Telephone
(504) 291-6998 Fax
Stephen@haedickelaw.com

Attorneys for Kendrick Johnson

## CERTIFICATE OF SERVICE

This certifies that I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system that will send a notice of electronic filing to all counsel of record.

Dated:  November 1, 2019

*/s/ Stephen J. Haedicke*