UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 16-032 |
| v. | * | SECTION: "M" |
| LOUIS AGE JR., ET. AL | * | |

\* \* \*

**UNITED STATES' OPPOSITION TO DEFENDANT
KENDRICK JOHNSON'S MOTION TO SEVER**

**NOW INTO COURT** comes the United States of America, appearing herein through the undersigned Assistant United States Attorney, and respectfully submits its opposition to the defendant Kendrick Johnson's motion to sever filed in this case. For the reasons stated below, severance is not warranted and his motion should be denied.

**FACTUAL SUMMARY**

Milton L. Womack (Womack), a cooperating defendant in *United States v. Hunter*, et al., 11-CR-105 (M.D. La.), a health care fraud (HCF) case, was murdered on July 27, 2012, at approximately 4:00 p.m. in front of his girlfriend's house in New Orleans, Louisiana, approximately 48 hours after it became public that he would be pleading guilty. Womack was sitting in a vehicle when an individual approached and fired multiple shots into Womack's vehicle, hitting and killing him. In addition to agreeing to plead guilty, Womack had agreed to cooperate with law enforcement and testify at trial which was then set for September 4, 2012.

Womack had been indicted in late August 2011, along with six co-defendants in connection with their work for a company called South Louisiana Home Health Care, Inc. (SLHHC), a purported provider of home health care services, with offices in New Orleans and Houma, Louisiana. Womack was a "patient recruiter" for SLHHC, who was paid kickbacks for locating

Medicare-eligible beneficiaries and providing their personal Medicare information to SLHHC. From January 2005 through December 2010, SLHHC billed Medicare approximately $19.3 million and was paid approximately $14.9 million for alleged home health care services for which the "patients" did not qualify.

The other defendants in the HCF case were Louis Age Jr. ("Age Jr."), the owner of SLHHC; Verna Age, Age Jr.'s ex-wife, a former owner of SLHHC, and the Director of Nursing at SLHHC; Ayanna Age Johnson, Age Jr.'s daughter, who was an officer of SLHHC and ran the company for a period of time; Dr. Michael Hunter, a physician who was paid by SLHHC to write home health referrals for patients, who later pleaded guilty; Kathy Perio, a registered nurse who conducted and signed home health assessments for SLHHC, and was later acquitted at trial; and Mary Johnson, a patient recruiter who had already pleaded guilty to conspiracy to commit health care fraud.

Not only was Womack involved in the fraudulent patient-recruitment scheme, but he additionally participated with Age Jr. in a fire insurance plot. As a part of the fire insurance scheme Womack set fire at the direction of Age Jr. to several buildings, which for all intents and purposes were owned by Age Jr. Because of Womack's integral involvement in both the HCF and fire insurance schemes, he posed a unique threat to the Age family and to Age Jr. in particular. When the HCF indictment was returned against the Age family and others in the Middle District of Louisiana ("MDLA"), Womack was immediately identified by Age Jr., Kendrick Johnson, the son-in-law of Age Jr., and other conspirators, as a weak link whose loyalty to the Age family was questioned. Johnson, Age Jr. and others had immediate discussions about killing Womack, but the group decided to first engage in a plan to keep Womack quiet and on their side. In relation to U.S. v. Hunter, et al., 11-CR-105 (M.D. La.), a subsequent investigation revealed that Age Jr. and

2

others had been involved in a scheme to obstruct justice and prevent Womack from cooperating with law enforcement and testifying truthfully in the HCF matter. Some of the actions taken by Age Jr. and others, included but were not limited to: (1) Age Jr. selected and purportedly paid for Womack's original counsel, a close friend of Age Jr., so that Womack would not have an attorney who would permit him to cooperate with the government; (2) this hired attorney told Womack to lie about and deny the criminal activities at SLHHC; (3) this hired attorney received cash from Age Jr. and Ayanna Age Johnson that he then provided to Womack so that Womack would conceal the truth from law enforcement; and (4) Age Jr., the hired counsel and others, pressured Womack to take full responsibility for those crimes with which Age Jr. and his co-defendants had been charged in the HCF case.

Once Womack was able to escape the grips of the Age family and obtain court-appointed counsel, it became clear that Womack was going to pose a problem for the Age family. On July 25, 2012, Womack's court-appointed attorney sent an ECF to the Court stating that Womack would enter a plea of guilty. After this sequence of events, the conspirators abandoned their efforts to silence Womack through bribes and intensified their efforts of planning to assassinate Womack. Because Womack was pleading guilty, cooperating, and not exculpating his co-defendants in the HCF case, Womack was murdered at the direction of Age Jr. and by associates of Age Jr.'s son, Louis Age III ("Age III").

An investigation into Womack's murder was conducted and revealed that the following events unfolded, among many others: (1) that threats were made to another witness in the HCF case by Age Jr., Age III, and Kendrick Johnson ("Johnson"); (2) Age Jr. planned the murder-for-hire, fearing that Womack would tell law enforcement about Age Jr. and Womack's involvement in the HCF and the burning of two buildings in 2006 to collect the insurance; (3) Age III and

Ronald Wilson ("Wilson") publicized amongst gang members of the Young Mafia Fellas ("YMF") that Age III would pay $1000s for the murder of Womack; (4) Wilson hired Stanton Guillory ("Guillory"), a member of the YMF and 110ers, for Age III, (5) Guillory accepted the murder-for-hire contract and included two accomplices in both the plan and the ambush of Womack, while consulting throughout with those charged; (6) Age III, Wilson, and Johnson conducted surveillance to locate Womack for Guillory; (7) Age III showed Guillory and gang members where Womack was located and paid a part of the promised amount to Guillory both before and after the murder; (8) and Wilson approached Age Jr. when Age III failed to make complete payment to Guillory once the murder of Womack was accomplished.

Johnson, Age Jr.'s son-in-law and close friend, and husband of Ayana Age Johnson, was subpoenaed to testify before the federal grand jury in August 2012. During his grand jury testimony, Johnson lied about his knowledge of the conspiracy to kill Womack.

After the murder, the Court continued the HCF trial from September 4, 2012, to October 1, 2012. The jury convicted Verna Age of the kickback conspiracy charge, but was unable to reach a verdict on the remaining charges against her and Age Jr. Following the retrial in March 2013, Age Jr. was convicted of both counts, and Verna Age was convicted of the sole remaining count against her. Ayanna Age Johnson testified about Age Jr.'s and his ex-wife's involvement in the conspiracy. Age Jr. testified at both trials that his daughter, Ayanna Age Johnson, masterminded the HCF without their knowledge.

Following Womack's murder, Age Jr., Kendrick Johnson and Age III, continued to use their tactics of intimidation and threats, but this time applied them toward Ayanna Age Johnson. Ayanna Age Johnson is the daughter of Age Jr., sister of Age III, and, at the time, the wife of Kendrick Johnson. Applying pressure to Ayanna Age Johnson, Age Jr. encouraged her to

4

plead guilty and take responsibility for all the HCF crimes. Age Jr. promised Ayanna Age Johnson he would take care of her and her children financially, and ensured her that her incarceration would be limited. Feeling the pressure from her family, Ayanna Age Johnson consulted with the attorney Age Jr. previously hired for Womack, who advised her that she was a good daughter for agreeing to plead guilty and accept full responsibility for the violations committed by her family. Eventually Ayanna Age Johnson obtained an independent attorney, who advised Ayanna Age Johnson that all defendants needed to accept responsibility for their criminal actions and that it would not be just for Ayanna Age Johnson to take the blame.

Unbeknownst to the other defendants and counsel in the HCF case, Ayanna Age Johnson pled guilty to all three counts of the indictment. For her safety, Ayanna Age Johnson's plea was taken under seal. Only when Age Jr. received the FBI interview report of Ayanna Age Johnson, did Age Jr. learn that Ayanna Age Johnson was cooperating with law enforcement. After the disclosure of Ayanna Age Johnson's cooperation, Johnson told Ayanna Age Johnson that she and her two children needed to leave the family compound in Slidell, Louisiana, where Age Jr., Verna Age, Kendrick Johnson, and Ayanna Age Johnson, along with her two children, were residing since the return of the HCF indictment. Her brother, Age III, told Ayanna Age Johnson that if she continued to cooperate, she would be treated by the family as though she were "dead." Age III tried to convince Ayanna Age Johnson to withdraw her plea and tell law enforcement authorities that she did not understand the consequences of her plea.

After Ayanna Age Johnson testified in the first HCF trial against Verna Age and Age Jr., which resulted in a hung jury as to Age Jr., Age Jr. continued his coercive tactics. Specifically, Age Jr. and his attorney friend went to the Terrebone Parish Sheriff's Office in attempts to convince them to charge Ayanna Age Johnson with theft of funds from SLHH, falsely claiming

5

that Ayanna Age Johnson admitted at trial that she embezzled funds from her father and the company. Age Jr. then filed a lawsuit attempting to obtain a declarative judgment as to ownership of the real property that was in Ayanna Age Johnson's name. These threats and accusations continued after the second trial, when Age Jr. was convicted of health care fraud.

Because of the violent nature of these defendants, resulting in the murder of Womack, and the persistent intimidation implemented against Ayanna Age Johnson, the government reasonably feared that Ayanna Age Johnson would be their next victim. Due to the defendants' actions, the Government has been required to conceal Ayanna Age Johnson's whereabouts from her family and friends until the resolution of this murder-for-hire trial.

## PROCEDURAL SUMMARY

On February 26, 2016, a federal grand jury returned a one-count Indictment against defendant Stanton Guillory for his role in the Murder-for Hire of Milton Womack. Rec. Doc. 3. Over a year later, a federal grand jury returned a Superseding Indictment Milton Womack against **Louis Age, Jr., Louis Age, III, a/k/a "Big Lou," Ronald Wilson, Jr., a/k/a "Tank," Kendrick Johnson,** and **Stanton Guillory, a/k/a "Nan Nan,"** for their roles in the murder-for-hire of Milton Womack. Rec. Doc. 52. Count 1 charges all five defendants with a Conspiracy to commit the Use of Interstate Commerce Facilities in the Commission of a Murder-for-Hire, a violation of Title 18, United States Code, Section 1958. Count 2 charges all five defendants with a substantive violation of Title 18, United States Code, Sections 1958 and 2. Counts 3 and 4 charge all five defendants with a conspiracy and substantive charge to kill Milton Womack with the intent to prevent his attendance and testimony in an official proceeding, the HCF trial, and to prevent his communication to law enforcement of HCF matters, violations of Title 18, United States Code, Sections 1512(a)(1)(A), 1512(a)(1)(C), 1512(a)(3)(A), 1512(k) and 2. **Age Jr.** and **Age III** are

charged in Count 5 with the killing of Milton Womack with the intent to prevent the communication by Womack to law enforcement about the use of fire to commit mail fraud, in violation of Title 18, United States Code, Sections 1512(a)(1)(C), 1512(a)(3)(A) and 2.  Counts 6 and 7 charges all five defendants with a conspiracy and substantive charge of killing Milton Womack with the intent to retaliate against Womack for providing information to law enforcement about HCF, in violation of Title 18, United States Code, Sections 1513(a)(1)(B), 1513(a)(2)(A), 1513(f) and 2.  Count 8 charges defendants **Age Jr., Age III** and **Johnson** with a conspiracy to intimidate, threaten and corruptly persuade another with the intent to influence and prevent testimony in the HCF trial and to prevent his communication with law enforcement in the HCF matter, in violation of Title 18, United States Code, Sections 1512(b)(1), 1512(b)(3) and 1512(k).  Count 9 charges **Age Jr., Age III** and **Johnson** with a conspiracy to retaliate against an individual for providing law enforcement with information relating to HCF, in violation of Title 18, United States Code, Sections 1513(e) and (f).  Count 10 charges defendant **Johnson** with making a false declaration before the grand jury, in violation of Title 18, United States Code, Section 1623.  Count 11 charges defendants **Age Jr.** and **Age III** with making false statements to a federal agent, in violation of Title 18, United States Code, Section 1001.

     A Notice of Special Findings was returned by the federal grand jury against each of the five defendants, and as a result, each defendant faced the possibility of the death penalty.  Rec. Doc. 52, pgs. 13-16.  On November 19, 2018, however, the United States filed its Notice of Intent Not to Seek the Death Penalty Against All the Defendants.  Rec. Doc. 214.

     Following the return of the Superseding Indictment, defendants have filed numerous motions ranging from discovery issues, the ability to retain two counsel for each defendant, and challenges to the transference of this case from one court section to another.  This Court issued a

scheduling order for additional discovery and substantive motions, with which the defendants timely complied. In accordance with this Court's scheduling order, defendant Kendrick Johnson filed a motion to sever. Rec. Doc. 280. Defendant Johnson asserts two grounds upon which he should be granted a severance from defendant Guillory. First, defendant Johnson argues that Federal Rule of Criminal Procedure 14(a) (Relief from Prejudicial Joinder) supports his request. Second, he argues that a joint trial with defendant Guillory will prejudice defendant Johnson's right to a fair trial, what's commonly referred to as the spillover effect. The United States submits this opposition to Johnson's motion, and respectfully requests this Honorable Court deny Johnson's motion to sever based on the law and the facts of the case outlined in this response.

## JOINDER AND SEVERANCE

**A.    Preference for Joinder[1]**

Rule 8, Federal Rules of Criminal Procedure, governs the joinder of both defendants and offenses in a criminal case.[2] When the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants and offenses is proper. *United States v. Welch*, 656 F.2d 1039, 1053-54 (5th Cir. 1981) (*citing United States v.*

---

[1] Notably, defendant does not argue that there was a misjoinder of defendants or offenses. *See* Rec. Doc. 280.
[2] Rule 8. Joinder of Offense and of Defendants.

> (a) Joinder of Offenses. The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are connected with or constitute parts of a common scheme or plan.
>
> (b) Joinder of Defendants. The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

*Gentile*, 495 F.2d 626, 630 (5th Cir. 1974)). Rule 8(b) permits the joinder of defendants in a single indictment where it is alleged that the defendants participated in the same series of criminal acts or transactions constituting the offense charged. Joinder of charges is "the rule rather than the exception" and Rule 8 is "construed liberally in favor of initial joinder." *United States v. Park,* 531 F.2d 754, 761 (5th Cir. 1976). Indeed, avoiding multiple prosecutions is a policy dictated by considerations both of fairness to defendants and efficient and orderly law enforcement. *See Rinaldi v. United States*, 434 U.S. 22, 27 (1977); *Petite v. United States*, 361 U.S. 529, 530 (1960).

Courts have consistently held that persons indicted jointly should be tried together, *Zafiro v. U.S.*, 506 U.S. 534, 537 (1993); *United States v. Causey*, 185 F.3d 407, 416 (5th Cir. 1999), a maxim which "is especially true when the defendants are charged with the same conspiracy." *United States v. McCord*, 33 F.3d 1434, 1452 (5th Cir. 1994). This is in part because joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro,* 506 U.S. at 537 (*citing Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). Additionally, joint trials are favored because they promote efficiency by "conserving state funds, diminishing inconvenience to witnesses and public authorities, and avoiding delays in bringing those accused of crime to trial." *United States v. Lane*, 474 U.S. 438 (1986). Further, joint trials are favored because they spare victims and witnesses from repeating the inconvenience and sometimes trauma of testifying. *Richardson v. Marsh*, 481 U.S. 200 at 210 (1987). Moreover, a joint trial is the fairest means of achieving a proper and reliable resolution of a criminal case because it allows the jury to obtain a much more complete view of all the acts underlying the charges than would be possible in separate trials. *Buchanan v. Kentucky*, 483 U.S. 402, 418 (1987). In *Richardson v. Marsh,* 481 U.S. 200, 210 (1987), the Supreme Court explained:

> It would impair both the efficiency and the fairness of the criminal justice system to require…that prosecutors bring separate

>proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience and sometimes trauma of testifying, and randomly favoring the last tried of defendants who have the advantage of knowing the prosecution's case beforehand.

This strong favoring of joinder of defendants is especially true in cases of conspiracy because "[w]hen many conspire, they invite mass trial by their conduct." *United States v. Perez*, 489 F. 2d 51, 65 (5th Cir. 1973) (*citing Kotteakos v. United States*, 328 U.S. 750, 773 (1946)). Specifically, where the indictment and proof at trial indicate substantial identity of facts and participants, joinder is favored. *United States v. Leach*, 613 F.2d 1295, 1301 (5th Cir. 1980). It is not required however that each defendant be charged in every count of the indictment. *Rule 8(b); United States v.Colatriano*, 624 F.2d 686, 688. (5th Cir. 1980). A conspiracy count may be joined with a count to commit the substantive offense. *Pinkerton v. United States*, 328 U.S. 640, 643 (1946). Separate conspiracies with different participants may be joined if the conspiracies are part of the same series of transactions. *United States v. Grassi*, 616 F.2d 1295, 1303 (5th Cir. 1980).

**Argument**

In the instant Superseding Indictment, defendant Johnson is charged in nine of the eleven counts. Specifically, defendant Johnson is charged in Count 1, 2, 3, 4, 6, 7, 8, 9 and 10. Many of these counts are conspiracy charges and the rest are substantive crimes, including the murder-for-hire of Milton Womack, which is the subject matter in various counts. All substantive crimes, including the charged murder under Counts 2, 4 and 7 are directly related to the conspiracies charged in Counts 1, 3, 6, 8 and 9. Furthermore, defendant Johnson is charged in six counts with defendant Guillory. The defendants named in those substantive counts, including defendant Johnson, are persons directly involved in the charged conspiracies. The substantive counts were

committed in furtherance of the conspiracies and by charged the conspirators and defendants, including defendant Johnson. The substantive charges are, in effect, the result of the conspiracies.

In support of his argument, defendant cites the Fifth Circuit decision in *United States v. McRae*, 702 F.3d 806 (5th Cir. 2012), *cert. denied,* 133 S.Ct. 2037 (2013), when it vacated a conviction due to the denial of a severance under F.R.C.P. 14(a). Defendant attempts to analogize his situation with that of New Orleans Police Officer David Warren in *McRae*, who was granted a new trial because the Fifth Circuit found that Warren suffered compelling prejudice from joinder. Defendant's case, however, can easily be distinguished from that of Warren in *McRae*, when one considers the charges defendant was indicted for and the evidence required to prove those charges against defendant.

In *McRae*, the Fifth Circuit emphasized that "[i]t is the rule, therefore, not the exception, that 'persons indicted together should be tried together, especially in conspiracy cases,'" *McRae,* 702 F.3d at 821, (*citing United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993)). The Fifth Circuit went on to say that its "case law does not reflect a liberal attitude toward severance," and that the facts in Warren's appeal "fall within the relatively few cases in which this and other courts have held that severance was warranted." *McRae*, 702 F.3d at 822-823.

Warren was a New Orleans Police Officer who was charged with depriving the victim of his right to be free from the use of unreasonable force by a law enforcement officer and carrying, using, and discharging a firearm in furtherance of a felony crime of violence resulting in death. The jury needed to determine whether Warren acted unlawfully when he shot the victim from a balcony of a shopping center. *McRae*, 702 F.3d at 825. The Fifth Circuit found Warren had suffered compelling prejudice from the denial of his motion to sever and that it could not be mitigated by limiting instructions. The Fifth Circuit found three major factors contributed to the

district court's abuse of discretion in denying defendant's motion to sever: "(1) *the marginal relationship between the charge and the evidence against Warren and that against his co-defendants*; (2) *the significant difference between the simpleness of the underlying charges*—essentially use of excessive force—against Warren, in the performance of his duty as a police officer, *and the crimes alleged against his co-defendants* involving dishonesty, corruption, obstruction and cover-up; (3) *the highly inflammatory and prejudicial nature of the charges and evidence against the co-defendants*, from which Warren was disassociated, involving the burning [of] Glover's body in Tanner's car, the racially motivated beating of Tanner and King; and the alleged alteration and distortion of a police investigative report." *McRae*, 702 F.3d at 828 (emphasis added). "Warren's case is one of those situations warranting a severance as opposed to the majority of cases that do not require severance because the inflammatory prejudice was not as great, e.g. Bieganowski, 313 F.3d at 288, or the difference between the types of crimes charged, on the one hand, *and the related evidence*, on the other, *was not so great.*" *Id.* (emphasis added).

Unlike the matter in *United States v. McRae*, 702 F.3d 806 (5th Cir. 2012), the relationship between the charges and evidence against defendant Johnson and that against his co-defendants is substantial and integral and will necessarily be introduced to prove the charges against defendant Johnson. The Government must prove beyond a reasonable doubt the various conspiracies and substantive charges against defendant Johnson *and* against his co-defendants, including defendant Guillory. Thus, unquestionably, much of the evidence necessarily introduced to prove the charges against defendant Johnson is either related to, connected to or exactly the same as much of the evidence required against his co-defendants. Lastly, there are no more highly inflammatory and prejudicial charges in the indictment than that with which defendant Johnson is charged- that is, murder.

Simply put, all of the evidence required to prove the numerous counts against defendant Johnson will be introduced as evidence against his co-defendants, including defendant Guillory.

**B.     Disfavor of Severance**

Rule 14, Federal Rules of Criminal Procedure, governs the severance of both defendants and offenses in a single indictment.[5] The United States Supreme Court has held that severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 538. "Generally, 'persons who are indicted together should be tried together.' It goes without saying that this is especially true when the defendants are charged with the same conspiracy. A '[s]everance under Rule 14 is an appropriate remedy for a disparity in the evidence only in the most extreme cases.' Along that same line, 'the mere presence of spillover effect does not ordinarily warrant severance.'" *United States v. McCord*, 33 F.3d 1434, 1452 (5th Cir. 1994) (citations omitted).

It is generally the rule, "that persons indicted together should be tried together, especially in conspiracy cases." *United States v. Thomas*, 627 F.3d 146, 156 (5th Cir. 2010)(quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1983). Further, in conspiracy cases, the Court prefers specific instructions over severance because it is generally presumed that juries follow instructions given by the district court and are capable of compartmentalizing the evidence against each defendant. *See United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018); *see also*

---

[5] Rule 14. Relief from Prejudicial Joinder

> (a) Relief. If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

*United States v. Chapman*, 851 F.3d 363, 380 (5th Cir. 2017)(quotations omitted); *see United States v. Tarango*, 396 F.3d 666, 677 (5th Cir. 2005). A defendant must show (1) specific and compelling prejudice such that a joint trial would prejudice him to such an extent that the district court could not provide adequate protection; and (2) that the prejudice outweighs the government's interest in economy of judicial administration. *Id.; see also United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012). It is an insufficient predicate for a motion to sever to merely allege a "spillover effect" – whereby the jury imputes the defendant's guilt based on evidence presented against his co-defendants. *Chapman*, 851 F.3d at 379; *see also United States v. Snarr*, 704 F.3d 368, 397 (5th Cir. 2013); *see United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir. 2002).

A district court's denial of a motion to sever is reviewable only for abuse of discretion, and to demonstrate an abuse of discretion, a defendant must show that he suffered specific and compelling prejudice against which the district court could not provide adequate protection and that the prejudice resulted in an unfair trial. *United States v. Rocha*, 916 F.2d 219, 226 (5th Cir. 1990). The Fifth Circuit will not reverse a decision by the trial court to deny severance unless the defendant has demonstrated "clear, specific and compelling prejudice that resulted in an unfair trial." *United States v. Bullock*, 71 F.3d 171, 174 (5th Cir.1995). This prejudice must be (1) "to such an extent that the district court could not provide adequate protection" and (2) that outweighed the government's interest in judicial economy. *United States v. Richards*, 204 F.3d 177, 193 (5th Cir. 2000). If the evidence is sufficient to support each defendant's conviction, the Fifth Circuit will affirm. *See United States v. Broussard*, 80 F.3d 1025, 1036-37 (5th Cir.1996).

In *United States v. Ledezma-Cepeda*, the Fifth Circuit held, in relevant part, that the district dourt did not abuse its discretion not to sever the defendant, Cepeda, despite the government's use of 404(b) evidence regarding his co-defendants involvement in nine other murders because the

14

District Court "ably parsed" the evidence and "instructed the jury many times . . . to consider certain evidence only against [Ledezma] [and] only for limited purposes." *Ledezma-Cepeda*, 894 F.3d at 692.  The Court found that the District Court "dispelled any scent of ambiguity or prejudicial inference by carefully and repeatedly instructing the jury, throughout the trial, that it consider the Rule 404(b) evidence as admissible only against Ledezma and only for limited purposes." *Id.* at 691.

Also, in *Ledezma*-Cepeda, the Fifth Circuit distinguished Cepeda from the defendants in *United States v. Cortinas* and *United States v. McRae* because Cepeda and Ledezma were "charged together, for the very same crime, committed at the same time." *Id.* at 692. The trial defendants, Cepeda and Ledezma, were convicted of interstate stalking and conspiracy to commit murder for hire. *Id.* at 688-89. Cepeda was also charged with tampering with documents or proceedings. *Id.* at 689.

In *United States v. Chapman*, the Fifth Circuit held, in relevant part, that the district court did not abuse its discretion in denying the defendant's motion to sever. *United States v. Chapman*, 851 F.3d 363, 379 (5th Cir. 2017).  The Fifth Circuit found that the defendant merely alleged a general spillover effect and failed to show the specific and compelling prejudice necessary to warrant vacatur.  *Id.* at 380.  Further, the Fifth Circuit found that, based upon the fact that the jury convicted on some counts, but not others, the jury appeared to follow the district court's instructions for the jury to separately consider each defendant, count, and the evidence as it pertained to each defendant and count.  *Id.*  Further, that the defendant merely complained of the sheer volume of evidence relating to his co-defendants compared to the relatively small portion relating to him which alone did not demonstrate that such an event caused him substantial prejudice. *Id.*

**Argument**

In the present case, defendant Kendrick Johnson has not met his "heavy burden" by showing a "specific and compelling prejudice" he will suffer from a joint trial with defendant Guillory. *United States v. Mitchell*, 31 F.3d 271, 276 (5th Cir. 1994). Equally important, defendant has not successfully demonstrated that any specific trial right he possesses will be compromised or that the denial of his motion will prevent the jury from making a reliable judgment regarding his guilt. *See Zafiro*, 506 U.S. at 538.

Defendant Johnson summarily states that he anticipates the Government will seek to "introduce voluminous amounts of inflammatory evidence that will prevent him from receiving a fair trial." Rec. Doc. 280-1, pg. 5. In his attempt to be a bit more specific, defendant Johnson asserts that the introduction of testimony and evidence pertaining to the violent 110ers and YMF in relation to defendant Guillory, including a murder of five-year old Briana Allen, will be too inflammatory and prejudicial and deprive defendant Johnson of his right to a fair trial.

Defendant does not allege any specific instances of prejudice, but insists that there will be prejudice simply because some of the evidence he anticipates will be admitted by the Government will be inherently prejudicial. Defendant claims that because of the anticipated introduction of evidence of violent gang activity "that is otherwise unrelated [to] the co-defendant's alleged involvement in a conspiracy, a severance is required." Rec. Doc. 280-1, pg. 6. Defendant additionally and incorrectly claims that any such evidence showing defendant Guillory's association with gang activity is irrelevant to the charges in the Superseding Indictment. Rec. Doc. 280-1, pg. 6. Defendant's argument is wrong, however. Defendant Guillory's gang association and activity is relevant to the instant offenses because that is exactly how he was connected to his co-defendants- Age Jr., Age III, Wilson and Johson- as a hired hitman. Additionally, the defendant

ignores the simple fact that all of the evidence related to the multiple conspiracy counts and substantive counts with which both he and defendant Guillory are charged will be introduced against all of the defendants for their direct roles in the criminal activity and their aiding and abetting of others.

A mere showing of prejudice is not sufficient, "for qualitatively it must be the most compelling prejudice against which the trial court will be unable to afford protection." *United States v. Perez*, 489 F.2d 51, 65 (5th Cir. 1973). Every conspiracy case involves defendants with different levels of culpability, but trial courts guard against confusion through their instructions and regulation of government argument. *See generally*, *United States v. Kennedy,* 564 F.2d 1329, 1334 (9th Cir. 1977); *United States v. Rhodes,* 569 F.2d 384, 390 (5th Cir. 1978). The defendant's trial rights will be amply protected through curative instructions to the jury by this Honorable Court to limit evidence to the appropriate defendant. *Zafiro*, at 540; *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir. 1993); *McCord* at 1452. There is no reason to believe that the jury cannot compartmentalize the evidence and make separate findings as to each defendant, as this Court will instruct jurors to do at the end of the trial. Any potential spillover is easily remedied by the use of jury instructions. Because defendant has only alleged prejudice in unsupported and conclusory terms and failed to carry his "heavy burden," severance in this matter would only result in forcing the government and the judicial system to expend limited resources presenting this case at least two times.

There is no basis to assume that the jury will be so inflamed by the evidence that co-defendant Guillory committed other murders to convict defendant Johnson on some improper basis. Here, defendant Johnson has not carried his burden of showing that there is a serious risk that a joint trial would prejudice him. It is the defendant's burden to establish that the drastic

17

remedy of severance is necessary and "vague and general allegations of the prejudice that would inhere in a joint trial of all defendants" do not satisfy that burden. *United States v. Morrow*, 537 F.2d 120, 135 (5th Cir. 1976). The Fifth Circuit has held repeatedly that jury instructions are sufficient to prevent the threat of prejudice, and that evidence of coconspirators violent acts do not justify severance. *See United States v. Thompson*, 253 F.3d 700 (5th Cir. 2001); *Manges*, 110 F.3d at 1174-75; *Rocha*, 916 F.2d at 228-29; *Pasado-Rios*, 158 F.3d at 863-64. And again, defendant Johnson himself is charged with the utmost serious of violations- murder. To the degree there is any risk of prejudice from the introduction of evidence, the Court has the discretion to issue specific limiting jury instructions. "[J]uries are presumed to follow their instructions." *Zafiro*, 506 U.S. at 540 (citation omitted).

In summary, defendant Johnson has been charged in the conspiracy to commit murder-for-hire that forms the basis for all of the other charges in the Superseding Indictment. Furthermore, and a fact Johnson ignores throughout his pleadings, Johnson is additionally charged with Louis Age Jr. and Louis Age III with the additional conspiracies in Counts 8 and 9, in which they are charged with intimidating and threatening another individual to prevent this individual from cooperating and communicating with law enforcement and to retaliate against this individual. Johnson is not just an active participant in the charges related to the murder-for-hire but he is an active participant in all of the charged conspiracies. He has not shown that a miscarriage of justice looms or that an unfair trial will result if his case is not severed. In the event that concern over unfair prejudice arises as the trial unfolds, the Court may issue a charge to the jury instructing them to give separate and personal consideration to each defendant. Accordingly, severance under Rule 14(a) is inappropriate.

Here, there is a five-defendant murder conspiracy case. Each of the defendants is tied to

the other intrinsically, as well as the evidence required to prove the charges against each defendant, regardless of the specific charges he faces as they are all related and have substantial evidentiary overlap. Severance of the defendants would result in an unreasonable, heavy burden on the judicial system and on the witnesses and victims, as the same evidence would be introduced, and the same witnesses and victims would need to testify over and over again. This would result in excessive cost to all parties involved, as well as excessive danger to the witnesses from over-exposure. It also may result in inconsistent outcomes as certain defendants would be exposed to the prosecution's case against co-defendants who were tried first. The consistent and overarching preference for joinder and against severance is meant for cases exactly like this one to allow for a safer and more expedient prosecution of dangerous criminals who have worked together, and should thus be tried together.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that this Honorable Court deny defendant Johnson's motion to sever.

Respectfully submitted,

PETER G. STRASSER
UNITED STATES ATTORNEY


*/s/ Elizabeth Privitera*
ELIZABETH PRIVITERA
Assistant United States Attorney
Louisiana Bar No. 27042
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3119
Email: Elizabeth.privitera@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on the 3rd day of December, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, and a copy of same will be served upon all counsel of record through the CM/ECF system.

                                       */s/ Elizabeth Privitera*
                                       ELIZABETH PRIVITERA