UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL DOCKET NO. 2:16-32 |
| VERSUS | JUDGE BARRY W. ASHE |
| LOUIS AGE JR.<br>LOUIS AGE III<br>RONALD WILSON JR<br>KENDRICK JOHNSON<br>STANTON GUILLORY | |

### KENDRICK JOHNSON'S REPLY TO THE UNITED STATES' OPPOSITION TO HIS MOTION TO SEVER DEFENDANTS

NOW INTO COURT, through undersigned counsel, comes the Defendant, Kendrick Johnson, who respectfully submits the following reply to the United States' Opposition to his Motion to Sever.

### INTRODUCTION

The Government's Opposition discusses, at great length, the Government's *theory* of prosecution and repeatedly asserts the truism that joint trials are generally favored. But what the Government fails to acknowledge is: (1) that severance should be granted if there is a serious risk of prejudice to one of the defendants;[1] and (2) that the situation now before this Court parallels those in which the Fifth Circuit Court of Appeal has found that severance was mandated.

1. *The Government Misreads Johnson's Argument*

The Government dedicates much of its initial argument to discussing the default preference for joinder over severance. Relying almost entirely on this default rule, the Government argues that Johnson was properly joined with Guillory in the superseding indictment, and therefore, the Court should deny the motion to sever. But Johnson does not

---

[1] *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

contend that severance is warranted because of an improper joinder.[2] Rather, severance is warranted because the bad act evidence the Government will seek to introduce against Guillory will prejudice Johnson and undermine his right to a fair trial. *See* Fed. R. Crim. P. 14.

As *Zafiro* makes clear, undue prejudice occurs when the jury considers evidence against one defendant that is actually only admissible against another defendant.[3] Regardless of whether the defendants were properly joined in a single indictment, severance is required when otherwise irrelevant or inadmissible evidence prejudices the jury against a defendant. The risk of prejudice is especially acute—and <u>severance is mandated</u>—when the evidence at issue is particularly voluminous or inflammatory.[4]

That is precisely the risk Johnson foresees: that the Government intends to offer extensive, highly inflammatory evidence, detailing a plethora of violent acts it attributes to Guillory, and to groups associated with Guillory, such as the 110ers, and the YMF. This will unquestionably create a tremendous risk of undue prejudice to Johnson. This evidence will not just undermine, but destroy Johnson's right to a fair trial.

The Government does not address Johnson's <u>actual</u> argument regarding the risk of prejudice posed by such inflammatory evidence until page 16 of its Opposition. But even then, the Government gives short shrift to the issue, failing to appreciate that evidence related to violent criminal acts of Guillory, the 110ers, and YMF are both (1) irrelevant to Johnson, and the actual charges at hand and (2) sufficiently prejudicial and inflammatory to mandate a severance.

---

[2] For this reason, the Government's misleading attempt to bifurcate Johnson's argument into two independent arguments should be ignored.
[3] *Zafiro*, 506 U.S. at 539.
[4] United States v. Cortinas, 142 F.3d 242, 248 (5th Cir. 1998); United States v. McRae, 702 F.3d 806, 827 (5th Cir. 2012); United States v. Erwin, 793 F.2d 656, 666 (5th Cir. 1986).

2

## 2. *The Evidence is Irrelevant to Johnson's Case*

First, in addressing the relevance of the evidence at issue, the Government summarily concludes that "[d]efendant Guillory's gang association and activity is relevant to the instant offense because that is exactly how [Guillory] was connected to his co-defendants—Age Jr., Age III, Wilson and Johnson—as a hired hitman."[5] But the Government is incorrect. Even assuming that Guillory's alleged <u>association</u> with YMF is relevant to the Government's theory as to how Guillory came into contact with co-defendant Wilson, that relevancy does not then extend to every violent criminal <u>act</u> allegedly committed by Guillory, or the YMF, and certainly not to violent acts committed by the 110ers.[6] The Fifth Circuit made this legal point quite clear in *United States v. Cortinas*.

In *Cortinas*, the Government sought to introduce evidence of the Bandidos gang's violent criminal activities while prosecuting a conspiracy that included defendants who were not associated with the Bandidos.[7] Before trial, two of the unassociated defendants moved for a severance, arguing "that much of the evidence that would be introduced at trial was irrelevant and so highly prejudicial to their case as to undermine their right to a fair trial."[8]

Ultimately, the Fifth Circuit agreed with the defendants and ruled that the trial court erred in not granting the severance.[9] In determining that the two defendants had been prejudiced by the introduction of gang-related evidence, the Fifth Circuit emphasized that: (1) the two defendants were not associated with the Bandidos, (2) the Bandidos' violent criminal acts were outside the scope of the two defendants' involvement in the charged conspiracy, and (3) the Government

---

[5] Government's Opposition, Rec. Doc. 311 at p. 16.
[6] As made clear in the Government's case "theory," only Guillory's association with YMF—not the 110ers—could arguable be considered relevant. *See* Rec. Doc. 311 at p. 4.
[7] *United States v. Cortinas,* 142 F.3d 242, 248 (5th Cir. 1998).
[8] *United States v. Cortinas,* 142 F.3d 242, 248 (5th Cir. 1998).
[9] *Id.*

introduced "highly inflammatory evidence" related to the Bandidos' shooting of a fourteen-year-old boy.[10] Because limiting instructions were inadequate to cure the prejudicial effect of the "violent, criminal activities of the Bandidos," the Fifth Circuit vacated the two defendants' convictions and remanded to the district court.[11]

Similar to the prosecution in *Cortinas*, the Government now seeks to introduce evidence related to the violent criminal acts of Guillory, the 110ers, and the YMF, despite the fact that Johnson has never been associated with either gang. Moreover, these other criminal acts are not within the scope of the charged conspiracies. Accordingly, the evidence at issue is irrelevant to Johnson's case.

### 3. The Evidence is Inflammatory and Prejudicial

The risk of undue prejudice is obvious, given that the evidence at issue is highly inflammatory. In its opposition, the Government seeks to downplay this issue by describing the evidence as merely "evidence that co-defendant Guillory committed other murders."[12]

But the Government omits several key details that make these "other murders" especially inflammatory and thus, unduly prejudicial. For this reason the Government's reliance on *United States v. Ledezma-Cepeda*[13] and *United States v. Chapman*,[14] is misplaced: those cases addressed

---

[10] *Id.*
[11] *Id.*
[12] Rec. Doc. 311 at p. 17.
[13] *United States v. Ledezma-Cepeda*, 894 F.3d 686 (5th Cir. 2018) ("[a]t bottom, Cepeda's appeal is based on no more than a discrepancy in the quantity (rather than quality) of crimes and general "spillover" concerns).
[14] *United States v. Chapman*, 851 F.3d 363, 380 (5th Cir. 2017) (finding that the defendant "merely complains" of a discrepancy in the "sheer volume of evidence" relating to his co-defendants as compared to him).

no more than "general" spillover due to the "quantity" of evidence, rather than the "quality" of the evidence (*i.e.* that the evidence was highly inflammatory).[15]

Conversely, Johnson shows that <u>both</u> the <u>quantity</u>[16] and the <u>quality</u> of the 110ers/YMF evidence will be prejudicial to his case, especially in light of the highly inflammatory nature of the evidence. The killing of five-year-old Briana Allen – a killing in which Guillory allegedly participated as the getaway driver[17]- is easily one of the most heinous, and notorious, crimes in New Orleans history. According to then-Mayor Mitch Landrieu, the shooting, "shook the city into a position where it could not look away."[18]

The murder of Briana Allen occurred on a Sunday afternoon in May of 2012, when members of the 110ers and YMF, wielding pistols and an AK-47 assault rifle, opened fire on a ten-year-old's birthday party. Although the intended targets were rival gang members, the shooting killed five-year-old Briana Allen and Shawanna Pierce, mother of three.[19] Additionally, the ten-year-old birthday boy and Briana Allen's uncle were injured in the shooting.[20] Adding to the inflammatory nature of this evidence, the horrible details of the shooting itself were exceeded

---

[15] *See Ledezma-Cepeda*, 894 F.3d at 692; *Chapman*, 851 F.3d at 380.

[16] As stated in Johnson's original Motion to Sever Defendants, the Government has produced tens of thousands of documents, phone calls recordings, and photographs related to the investigation and prosecution of Guillory, the 110ers, and YMF. *See* Rec. Doc. 280-1 at p. 2.

[17] *See* John Simerman, *Gang Members Convicted in Killing of 5-Year-Old Briana Allen*, The Times-Picayune (Feb. 3, 2015), *available at* https://www.nola.com/news/article_ca519f02-1c4f-55b8-901c-f29fb00fad0d.html.

[18] *Id.*

[19] *See* John Simerman, *Gang Members Convicted in Killing of 5-Year-Old Briana Allen*, The Times-Picayune (Feb. 3, 2015), *available at* https://www.nola.com/news/article_ca519f02-1c4f-55b8-901c-f29fb00fad0d.html.

[20] *See* Ramon Antonio Vargas, *Boasts about Little Briana Allen's Murder Allegedly Led Police to Suspect,* The Times-Picayune (April 23, 2013), available at https://www.nola.com/news/crime_police/article_cbdfdba8-6ca7-52bc-9eab-2ac6b7446573.html.

by a subsequent statement of one of the shooters, who "chuckled when describing how he had killed 'a whole baby.'"[21]

Plainly, the police reports, autopsy reports, photographs, and testimony that the Government would offer to "prove" the Briana Allen killing, and Stanton Guillory's alleged role in it, would inflame any juror.

If evidence concerning the killing of a fourteen-year-old boy,[22] evidence detailing the burning of a dead body,[23] and evidence detailing racially motivated beatings,[24] are sufficiently inflammatory to mandate a severance, surely evidence describing the killing of a five-year-old at a birthday party will meet the test. Put conversely, no juror could hear the highly inflammatory details of the Briana Allen killing and <u>not</u> become prejudiced against Guillory, and his co-defendants – one of whom is Kendrick Johnson. There is no jury instruction that exists that could adequately cure the risk of prejudice in such a situation.[25]

### 4. *The Risk of Prejudice Outweighs Concerns for Judicial Economy*

Finally, the Government argues that severance should not be granted because it would "result in an unreasonable, heavy burden" on the judicial system. But the Government's argument is incorrect, both factually and legally.

As a factual matter, severing Johnson's trial from Guillory's would actually simplify, and therefore expedite Johnson's trial. Under the Government's theory of this prosecution, the only alleged nexus between any of the co-defendants and the 110ers or YMF is that co-defendant

---

[21] *See* John Simerman, *Gang Members Convicted in Killing of 5-Year-Old Briana Allen*, The Times-Picayune (Feb. 3, 2015), *available at* https://www.nola.com/news/article_ca519f02-1c4f-55b8-901c-f29fb00fad0d.html.
[22] *See Cortinas*, 142 F.3d at 246, 248.
[23] *McRae*, 702 F.3d 806 at 828.
[24] *Id.*
[25] *See*, *e.g. Cortinas*, 142 F.3d at 248 (5th Cir. 1998); *United States v. McRae*, 702 F.3d 806, 827 (5th Cir. 2012).

Wilson allegedly publicized the murder-for-hire contract "amongst gang members of [YMF]."[26] Significantly, the Government does not allege any connection between any defendant (save, Guillory) and the 110ers. Therefore, even assuming that Guillory's alleged association with YMF is relevant to the charged conspiracies, his alleged association with the 110ers is not. And again, neither are the acts committed by either of those gangs.

However, Johnson anticipates that the Government will seek to introduce voluminous amounts of evidence related to both the 110ers and YMF. But because the evidence concerning the 110ers and Guillory's alleged association with them is entirely irrelevant to Johnson's case, the Court will be called upon to repeatedly determine whether the evidence is related to acts perpetrated by the YMF, the 110ers, or both. This will require a series of separate hearings or arguments to determine who is a member of which gang, and who participated in which act. By severing Johnson's case from that of co-defendant Guillory, this Court can simplify the issue by excluding outright—at Johnson's separate trial—any evidence concerning the 110ers, and any other bad acts evidence not related to the charged conspiracies.

More importantly, the Government's contention ignores the legal significance of the risk posed by a joint trial. It is axiomatic that the jury's consideration of "only relevant and competent evidence bearing on the issue of guilt or innocence" constitutes an "important element of a fair trial."[27] However, that right will be compromised here by the undeniable risk that the jury will be swayed by inflammatory evidence that is irrelevant to Johnson, and irrelevant to the charges against Johnson. Judicial economy never takes priority over the right to a fair trial.[28]

---

[26] Rec. Doc. 311 at p. 4.
[27] *Bruton v. United States*, 391 U.S. 123, n. 6 (1968)
[28] See *Bruton*, 391 U.S. at 135 (quoting *People v. Fisher*, 249 N.Y. 419, 432 (1928) (Lehman, J., dissenting) ("We secure greater speed, economy and convenience in the administration of the law at the price of fundamental principles of constitutional liberty. That price is too high.");

Here, to protect Johnson's right to a fair trial, this Honorable Court should grant Johnson's Motion for Severance.

Respectfully submitted,

*/s/ Herbert V. Larson, Jr.*
Herbert V. Larson, Jr., (Bar No. 8052)
THE LAW OFFICES OF HERBERT V.
 LARSON, JR.
700 Camp Street
New Orleans, Louisiana 70130
(504) 528-9500 Telephone
hvl@hvllaw.com

*/s/ Stephen J. Haedicke*
Stephen J. Haedicke (Bar No. 30537)
LAW OFFICE OF STEPHEN J. HAEDICKE
1040 Saint Ferdinand St.
New Orleans, LA 70117
(504) 291-6990 Telephone
(504) 291-6998 Fax
Stephen@haedickelaw.com

Attorneys for Kendrick Johnson

**CERTIFICATE OF SERVICE**

This certifies that I electronically filed the foregoing pleading with the Clerk of Court by using the CM/ECF system that will send a notice of electronic filing to all counsel of record.

Dated:  December 12, 2019

*/s/ Stephen Haedicke*

---

*Richardson v. Marsh*, 481 U.S. 200, 218, 107 S.Ct. 1702, 1713, 95 L.Ed.2d 176, 192 (1987) (Stevens, J., dissenting) ("[o]n the scales of justice...considerations of fairness normally outweigh administrative concerns").