UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 16-32 |
| KENDRICK JOHNSON | SECTION M (1) |

### ORDER & REASONS

Before the Court is a motion by defendant Kendrick Johnson for compassionate release.[1] The United States of America (the "Government") responds in opposition.[2] Considering the parties' memoranda, the record, and the applicable law, the Court denies the motion.

### I. BACKGROUND

On August 17, 2017, the grand jury in the United States District Court for the Eastern District of Louisiana returned a superseding indictment in this case charging five co-defendants, Louis Age Jr., Louis Age III, Ronald Wilson Jr., Johnson, and Stanton Guillory, with various counts arising from the July 27, 2012 murder of Milton Womack.[3] Womack was a co-defendant in a Medicare fraud case filed in the United States District Court for the Middle District of Louisiana ("MDLA"), and styled *United States v. Louis T. Age, Jr., et al.*, Criminal Action No. 11-105. Womack was murdered two days after documents were filed in that case indicating that he was changing his plea to guilty. The Government's theory of this case was that the five co-defendants (including Johnson) conspired to murder Womack in retaliation for his past cooperation in the Medicare fraud case and to prevent him from testifying at the trial in that matter.

---

[1] R. Doc. 1057.
[2] R. Doc. 1061.
[3] R. Doc. 52.

Johnson was not a defendant in the Medicare fraud case in the MDLA. He is the former son-in-law of Age Jr., and former brother-in-law of Age III. Johnson was named in nine counts of the superseding indictment in this murder case.[4] Count 1 charged Johnson and his co-defendants with conspiring to commit murder for hire, in violation of 18 U.S.C. § 1958.[5] Count 2 charged Johnson and his co-defendants with using a facility of interstate commerce (a cell phone) to commit murder for hire, in violation of 18 U.S.C. §§ 1958 and 2.[6] In Count 3, Johnson and his co-defendants were charged with conspiring to murder Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(3)(A) and 1512(k).[7] Count 4 charged Johnson and his co-defendants with killing Womack to prevent him from testifying in the Medicare fraud case, in violation of 18 U.S.C. §§ 1512(a)(1)(A), 1512(a)(3)(A), and 2.[8] In Count 6, Johnson and his co-defendants were charged with conspiring to murder Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(2)(A) and 1513(f).[9] Count 7 charged Johnson and his co-defendants with killing Womack in retaliation for his cooperation with law enforcement, in violation of 18 U.S.C. §§ 1513(a)(1)(B), 1513(a)(2)(A), and 2.[10] Count 8 charged Johnson, Age Jr., and Age III with conspiring to use intimidation, threats, and corrupt persuasion to influence, delay, or prevent testimony in the Medicare fraud case and hindering, delaying, and preventing further communication with law enforcement relating to the commission or possible commission of a federal offense (healthcare fraud), all in violation of 18 U.S.C. § 1512(k).[11] In Count 9, Johnson, Age Jr., and Age III were charged with conspiring to retaliate

---

[4] *Id.*
[5] *Id.* at 2.
[6] *Id.* at 2-3.
[7] *Id.* at 3-4.
[8] *Id.* at 4-5.
[9] *Id.* at 5-6.
[10] *Id.* at 6.
[11] *Id.* at 6-8.

against a witness for aiding law enforcement in the Medicare fraud case, in violation of 18 U.S.C. § 1513(f).[12] Count 10 charged Johnson with making false statements to the grand jury regarding Womack's murder, in violation of 18 U.S.C. § 1623.[13]

Before trial, Johnson pleaded guilty to a two-count superseding bill of information charging him with making false declarations before a grand jury in violation of 18 U.S.C. § 1623(a) and misprison of a felony in violation of 18 U.S.C. § 4.[14] Johnson and the Government entered into a plea agreement under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure stipulating to a sentence of eight years' imprisonment, consisting of five years as to Count 1 and three years as to Count 2, to be served consecutively.[15] At the time the plea agreement was entered and accepted by the Court, Johnson was in poor health and receiving dialysis treatment that would have greatly affected the conduct of, and logistics for, the multi-week trial.[16]

Johnson has been in federal custody since September 6, 2017.[17] He is currently housed at an administrative security federal medical center in Springfield, Missouri ("MCFP Springfield") where he continues to receive dialysis and other treatments for his medical condition.[18] His projected release date is June 30, 2024.[19]

## II.   PENDING MOTION

Johnson seeks compassionate release under the 18 U.S.C. § 3582, arguing that he has exhausted his administrative remedies with the Bureau of Prisons (the "BOP") and that extraordinary and compelling circumstances, specifically his medical condition, justify a sentence

---

[12] *Id.* at 8-9.
[13] *Id.* at 9-10.
[14] R. Docs. 623; 629.
[15] R. Doc. 631.
[16] R. Doc. 1061 at 1-2.
[17] *Id.* at 8.
[18] *Id.* at 8, 15-16.
[19] *Id.* at 8.

3

modification.[20] Johnson argues that he has end-stage kidney failure and a life expectancy of less than ten years, and that his type-II diabetes can be better managed outside of prison.[21] He also argues that several of his family members are willing to donate a kidney to him, but he cannot receive a transplant while incarcerated.[22] Further, Johnson argues that courts often grant compassionate release for inmates who have served the "lion's share" of their sentences, and he has served 68 months of his 96-month sentence, which amounts to 70 percent.[23] Johnson states that, if he is released, he would reside with his parents, grandmother, and sister at his parents' home in New Orleans and that he would receive dialysis treatment while abiding by all conditions of release, including electronic monitoring or house arrest.[24] Johnson argues that he is not a danger to the community because he pleaded guilty to non-violent offenses and once coached youth football.[25] Finally, Johnson argues that the factors to be considered under 18 U.S.C. § 3553(a) support release because he has served most of his sentence for non-violent crimes.[26]

In opposition, the Government argues that a sentencing modification is not justified considering Johnson's participation in a murder-for-hire scheme and the substantial benefit in sentencing that his Rule 11(c)(1)(C) plea agreement afforded to him.[27] The Government further argues that Johnson's medical condition does not amount to an "extraordinary and compelling reason" justifying early release.[28] The Government points out that Johnson's medical condition and life expectancy were considered in the plea negotiations and sentencing, which resulted in

---

[20] R. Doc. 1057-1 at 5-9.
[21] *Id.* at 7-8.
[22] *Id.* at 9.
[23] *Id.* at 9-10.
[24] *Id.* at 10-11.
[25] *Id.* at 11-13.
[26] *Id.* at 13-15.
[27] R. Doc. 1061 at 1-9. The Government concedes that Johnson has exhausted his administrative remedies. *Id.* at 12.
[28] *Id.* at 13-16.

4

Johnson receiving a generous deal.²⁹  The Government also argues that Johnson's medical condition has not changed since sentencing, he is receiving dialysis and other proper treatment at MCFP Springfield, and there is no indication that Johnson is a good candidate for a kidney transplant or that any of the willing family members is a match.³⁰  The Government adds that Johnson's serving 68 months does not express the seriousness of his crimes and that the § 3553 factors do not favor early release considering Johnson's criminal history and characteristics, including that he was the first person to suggest murdering Womack.³¹

**III.   LAW & ANALYSIS**

"The district court's jurisdiction to correct or modify a defendant's sentence is limited to those specific circumstances enumerated by Congress in 18 U.S.C. § 3582." *United States v. Garcia*, 606 F.3d 209, 212 n.5 (5th Cir. 2010).  Section 3582(c), as amended by the First Step Act, provides that "[a] court, on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a),³² if 'extraordinary and compelling reasons warrant such a reduction.'" *United States v. Chambliss*, 948 F.3d 691, 692-93 (5th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  Any reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).³³  "The Sentencing

---

²⁹ *Id.* at 15.
³⁰ *Id.* at 15-16.
³¹ *Id.* at 16-18.
³² Section 3553(a) provides that, upon consideration of "the nature and circumstances of the offense and the history and characteristics of the defendant," among other things, a "court shall impose a sentence sufficient, but not greater than necessary," to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; afford adequate deterrence to criminal conduct; protect the public from further crimes of the defendant; and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(1)-(2).
³³ The policy statements of the Sentencing Commission have not been amended to reflect the statutory changes brought about by the First Step Act, resulting in a discrepancy as to who may bring § 3582(c) motions in court (the relevant policy statement continues to provide that a term of imprisonment may be reduced only upon a motion by the director of the BOP), which has led some courts to conclude that the Sentencing Commission does not have a policy position applicable to motions brought by defendants pursuant to the First Step Act, while others have

Commission's relevant policy statement provides that extraordinary circumstances exist when the defendant suffers from a terminal illness or 'serious physical or medical condition' that 'substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.'" *Perdigao*, 2020 WL 1672322, at *1 (quoting U.S.S.G. § 1B1.13). The policy statement also provides that a sentence may only be reduced if the court determines that "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Section 3142(g) requires that a court presented with a request for release consider factors such as the nature and circumstances of the charged offense, the history and characteristics of the defendant, and the nature and seriousness of the danger to any person or the community at large posed by the defendant's release. 18 U.S.C. § 3142(g).

While Johnson certainly suffers from a serious medical condition that *may* be terminal (namely, end-stage kidney disease that requires dialysis treatment), this is not a case that justifies early release. "[I]t is the actuality, not the risk, of terminal illness that makes a prisoner's circumstances extraordinary." *United States v. McMaryion*, 64 F.4th 257, 260 (5th Cir. 2023). Johnson's generous Rule 11(c)(1)(C) plea agreement and resulting sentence have already accounted for his medical condition and life expectancy. He does not identify any substantial

---

held that the policy statement may be helpful but not dispositive in deciding such motions. *United States v. Perdigao*, 2020 WL 1672322, at *2 (E.D. La. Apr. 2, 2020) (discussing U.S.S.G. § 1B1.13 and collecting cases). The Court agrees with those courts finding that the relevant policy statement is instructive to the determination of whether "extraordinary and compelling reasons" exist to warrant a sentence reduction. *See id.*; *United States v. LeBlanc*, 2020 WL 2331690, at *2 (E.D. La. May 11, 2020); *United States v. Jones*, 2020 WL 5995689, at *2-3 (N.D. Miss. Oct. 9, 2020) (recognizing that in *United States v. Gonzalez*, 819 F. App'x 283, 284 (5th Cir. 2020), and *United States v. Bell*, 823 F. App'x 283, 284 (5th Cir. 2020), the Fifth Circuit suggested "that § 1B1.13 and the circumstances listed in its application note should be considered – if not applied," and noting that the Second Circuit in *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020), held that district courts' discretion cannot be constrained to consider as "extraordinary and compelling reasons" only those examples identified in § 1B1.13 and its application note 1(D)). To be sure, the Fifth Circuit in *United States v. Thompson,* 984 F.3d 431, 433 (5th Cir. 2021), observed that "[a]lthough not dispositive, the commentary to [U.S.S.G.] § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."

changes in his medical condition since the time of sentencing that were not already considered or known to the Court at the time of sentencing. Although Johnson states that he cannot receive a kidney transplant while incarcerated, he has not shown that he is a candidate for such treatment or that there is a viable match. Moreover, while Johnson may have pleaded guilty to "non-violent" offenses, he was charged in, and was an integral part of, a murder-for-hire plot. Thus, Johnson's history and characteristics demonstrate that even in his reduced physical capacity, he is still a danger to the community considering his willingness to engage in violent plots or, at the very least, to lie and fail to notify authorities about them.

### IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Johnson's motion for compassionate release (R. Doc. 1057) is DENIED.

New Orleans, Louisiana, this 22nd day of June, 2023.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE